IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Michael Antwan Sheppard, #280508, ) | |
| ) | Civil Action No. 3:05-2063-CMC-JRM |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | |
| ) | |
| Henry D. McMaster, Attorney ) | **REPORT AND RECOMMENDATION** |
| General for South Carolina, ) | |
| ) | |
| Respondent. ) | |
| ) | |

Petitioner, Michael Antwan Sheppard ("Sheppard"), is an inmate at the South Carolina Department of Corrections serving a sentence of thirty years imprisonment for kidnapping, armed robbery, possession of a weapon during a crime of violence, and first degree criminal sexual conduct. He filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on July 6, 2005.[1] The case was automatically referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02 (B)(2)(c), DSC. Respondents filed a motion for summary judgment, supported by copies of portions of the state court record, on November 18, 2005. Because petitioner is proceeding pro se, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued on January 4, 2006, advising petitioner of his responsibility to properly respond to the motion for summary judgment. Petitioner has filed his response on April 6, 2006.

---

[1]This is the Houston v. Lack, 487 U.S. 266 (1988) "delivery" date. See order filed July 26, 2005.

## Procedural History

The charges against Sheppard and his co-defendant, Mario Baldwin, arose from the armed robbery of a McDonald's restaurant in Greenville County in the early morning hours of July 30, 2000. Sheppard and Baldwin confronted three employees (Bruce Tyler, Eric Marshall, and Fatina Arnold) as they began to open for business. Law enforcement authorities surrounded the restaurant and a hostage crisis developed. During this time, both Sheppard and Baldwin committed sexual battery on Arnold. Also, Baldwin shot Marshall. Eventually, the standoff ended and Sheppard and Baldwin were arrested. Both gave statements.

Sheppard entered a plea of guilty on October 16, 2001. He was represented by Clay Allen. The parties announced a plea agreement at the hearing that the assault and battery with intent to kill charge against Sheppard was being dismissed and that all sentences imposed on the remaining charges would run concurrently. The Court accepted Sheppard's plea on this basis, but deferred sentencing based on his agreement to testify against Baldwin. (App. 1-28). Sheppard was sentenced on December 11, 2001 (App. 30-47). No direct appeal was filed.

Sheppard filed an application for post-conviction relief ("PCR") on October 7, 2002. (App. 49). After Thomas Quinn was appointed to represent Sheppard, the original application was amended several times. An evidentiary hearing was held on December 2, 2003. (App. 72). Sheppard appeared and testified. He also called Detective Daniel Fuller of the Greenville Police Department as a witness.[2] Allen was called as a witness by the State. On January 30, 2004, the PCR court issued an order denying the PCR application.

---

[2]Detective Fuller testified concerning the circumstances surrounding the statements given by Sheppard. (App. 104).

2

A <u>Johnson</u>[3] petition for writ of certiorari was filed on Sheppard's behalf in the South Carolina Supreme Court asserting that trial counsel was ineffective for failing to investigate and challenge the voluntariness of his statements to the police. Sheppard also filed a pro se petition, but it is not a part of the record. However, respondent concedes that the PCR court dealt with all the claims presented in the present petition in some fashion and that "the exhaustion doctrine is satisfied."

### Grounds for Relief

Sheppard asserts that his attorney was ineffective in numerous ways. Respondent has summarized these claims in his memorandum, and Sheppard has not objected to his statement of his claims. However, the undersigned restates the claims for clarity and to aid discussion.

1. Counsel was ineffective for failing to investigate the circumstances surrounding his two statements to the police which were coerced and involuntary.

2. Counsel was ineffective because he (counsel) did not advise him of his right to appeal.

3. Counsel was ineffective for failing to challenge the armed robbery indictment which was defective.

4. Counsel was ineffective for failing to obtain an exculpatory statement during discovery which was given by a victim (Marshall) to the police.

5. Counsel was ineffective in communicating the correct plea negotiation to him by telling him that he could receive between 10 and 30 years imprisonment.

---

[3]<u>Johnson v. State</u>, 294 S.C. 310, 364 S.E.2d 2901 (1988).

3

6. Counsel was ineffective for failing to challenge the indictments because they were not timely obtained under state procedure.

7. Counsel was ineffective for not challenging the three kidnapping indictments because there was, in reality, only one kidnapping offense.

8. Counsel was ineffective because he failed to properly investigate the case.

9. Counsel was ineffective for allowing him to plead guilty to the criminal sexual conduct charge.

## Discussion

Since Sheppard filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), cert. denied, 521 U.S. 371 (1998) and Green v. French, 143 F.3d 865 (4th Cir. 1998), cert. denied, 525 U.S. 1090 (1999). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d). See Williams v. Taylor, 529 U.S. 362 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases …. A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.
>
> * * *
>
> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Id. at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."

5

Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added).

Strickland at 694-95.

Under this AEDPA standard the court's analysis should center on whether the state courts properly applied the Strickland test. See Williams v. Taylor, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

Ineffective assistance of counsel claims may be asserted in limited circumstances where the petitioner has entered a plea of guilty. A guilty plea generally precludes the petitioner from challenging defects in the process which occurred prior to the plea. He "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann." Tollett v. Henderson, 411 U.S. 258, 267 (1973). When such a claim is raised, the voluntariness issue is subsumed within the claim of effectiveness of the attorney's assistance. Hill v. Lockhart, 474 U.S. 52, 56 (1985).

In order to prevail on a claim of ineffective assistance of counsel pertaining to a guilty plea, a petitioner must show that his lawyer's performance was incompetent, i.e., the first prong of the Strickland test. Under this prong, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. The prejudice prong of the Strickland test is modified and the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

The PCR court reviewed the record and properly applied the Strickland v. Washington and Hill v. Lockhart standards to Sheppard's claims of ineffective assistance of counsel. (App. 134). The PCR court found that Sheppard's PCR testimony was not credible, but that of Allen and Detective Fuller was credible. For instance, Sheppard testified at the PCR hearing that the transcripts of his plea and sentencing hearings were incorrect and that he did not make the statements attributed to him therein. The PCR court specifically found that this testimony was not credible and that his "testimony as a whole at the PCR hearing lacked credibility." (App. 136). Therefore, the transcripts must be considered to be accurate as they relate to Sheppard's claims.

1.     Statements

Sheppard asserts that his attorney was ineffective for not challenging the two statements he gave police after his arrest. At the PCR hearing, Sheppard testified that he did not understand the Miranda warnings that were given to him and that he was confused when he gave the statements. (App. 81-82). This claim was raised in Sheppard's Johnson petition to the South Carolina Supreme Court.

7

The Fifth Amendment provides: "No person … shall be compelled in any criminal case to be a witness against himself." In <u>Miranda</u>, the Supreme Court recognized that the atmosphere of custodial interrogation in and of itself is inherently coercive. <u>Miranda</u>, 384 U.S. at 458. In order to ensure the Fifth Amendment privilege against self-incrimination is not undermined in such a situation, the Supreme Court established certain procedural safeguards for counteracting the compelling pressures inherent in the custodial interrogation setting. <u>See</u> <u>id</u>. at 444. Specifically, <u>Miranda</u> requires that prior to any questioning in such a setting, the person being interrogated must be warned he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney. See id. "The Court's fundamental aim in designing the <u>Miranda</u> warnings was 'to assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process.'" <u>Colorado v. Spring</u>, 479 U.S. 564, 572 (1987) (quoting <u>Miranda</u>, 384 U.S. at 469). The Supreme Court has held that "<u>Miranda</u> announced a constitutional rule that Congress may not supersede legislatively." <u>Dickerson v. United States</u>, 530 U.S. 428, 444 (2000). Following the rule of stare decisis, the Court further declined to overrule the <u>Miranda</u> decision, which "has become embedded in the routine police practice to the point where the warnings have become part of our national culture." <u>Id</u>.

To ensure that law enforcement officials comply with <u>Miranda</u>'s requirements, the Supreme Court established an exclusionary rule, holding that statements obtained in violation of <u>Miranda</u> must be excluded from the prosecution's case-in-chief even if the statements are otherwise voluntary within the meaning of the Fifth Amendment. <u>Oregon v. Elstad</u>, 470 U.S. 298, 307 (1985). The failure to administer <u>Miranda</u> warnings creates an irrebuttable presumption of

compulsion, requiring the suppression of the accused's statements for purposes of the prosecution's case-in-chief. Id. at 306-07 and n. 1.

A suspect may waive his Miranda rights after receiving the required warnings and agree to answer questions or make a statement during custodial interrogation, "provided the waiver is made voluntarily, knowingly and intelligently." Miranda, 384 U.S. at 444; see also Spring, 479 U.S. at 572; Moran v. Burbine, 475 U.S. 412, 421 (1986). In such a case, the suspect's statements are not "compelled" within the meaning of the Fifth Amendment and may be introduced against him in the prosecution's case-in-chief without implicating constitutional concerns. See Spring, 479 U.S. at 573. The question whether an accused has validly waived his Miranda rights involves two distinct inquiries: (1) whether the relinquishment of the right was "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception;" and (2) whether the waiver was made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran, 475 U.S. at 421; see also Spring, 479 U.S. at 573. "Only if the 'totality of the circumstances surrounding the interrogation,'" including the background, experience, and conduct of the accused, "reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." Moran, 475 U.S. at 421 (quoting Fare v. Michael C., 442 U.S. 707, 725 (1979)); see also North Carolina v. Butler, 441 U.S. 369, 374-75 (1979) (citing Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).

In determining whether a valid waiver has been made, the Court need not inquire into the state of mind of the police, which is "irrelevant to the question of the intelligence and voluntariness of the suspect's election to abandon his rights." See Moran, 475 U.S. at 423. In addition, the

"Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege," such as that he may be questioned and his statements used against him in a different criminal investigation. Spring, 479 U.S. at 574. Nor does the Constitution require the police to "supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights." Moran, 475 U.S. at 422. As long as a suspect's voluntary decision to speak to law enforcement officials is made with full awareness and comprehension of all the information Miranda requires the police to convey-i.e ., that he has the constitutionally-protected right to remain silent and to have an attorney present during custodial interrogation, and that whatever he chooses to say in response to police questioning may be used as evidence against him-his waiver is knowing and intelligent within the meaning of Miranda. See Spring, 479 U.S. at 574-75; see also Moran, 475 U.S. at 422-24.

On federal habeas corpus review of petitioner's state conviction, petitioner has the burden of proving that he did not competently and intelligently waive his constitutional rights. Johnson, 304 U.S. at 468-69 (involving waiver of right to assistance of counsel). Although the ultimate determination of a valid Miranda waiver is a mixed question of law and fact not subject to the presumption of correctness, Boggs v. Bair, 892 F.2d 1193, 1199 (4th Cir. 1989), *citing* Miller v. Fenton, 474 U.S. 104 (1985), the state court's factual findings supporting its waiver determination are presumed correct under 28 U.S.C. § 2254(e)(1). Moreover, in this federal habeas corpus proceeding, the state court's disposition of petitioner's Miranda claim will not be overturned unless it (1) was contrary to, or involved an unreasonable application of, clearly established Supreme

Court precedent, or (2) was based on an unreasonable determination of the facts in light of the record evidence. 28 U.S.C. § 2254(d); Williams, 529 U.S. at 402-03.

At the PCR hearing, Detective Fuller testified fully about the two statements given by Sheppard. He testified that the statements were freely and voluntarily given after Sheppard had been advised of his rights and after he executed written waivers. (App. 102-10). Allen testified that Sheppard told him he had been "threaten (sic) with death row and life imprisonment if he did not talk to the police." (App. 116). Allen further testified that he would have challenged the statements if Sheppard had elected to go to trial, but even if the statements had been excluded, the evidence against Sheppard was overwhelming. (App. 122). Additionally, Sheppard admitted that his plea hearing that the statements he gave to the police were "freely and voluntarily given." Sheppard is not entitled to relief on this ground.

2.      Right to Appeal

Sheppard asserts that his attorney was ineffective because he did not advise him of his right to appeal. Allen testified that it was not his practice to advise his clients of appeal rights after a guilty plea. (App. 116).

The right to effective assistance of counsel extends to direct appeal. Pennsylvania v. Finley, 481 U.S. 551, 559 (1987). An attorney must correctly inform his client of the direct consequences of his plea, e.g., the potential maximum sentence. Manley v. United States, 588 F.2d 79 (4th Cir. 1978). The attorney is not required to advise his client of the collateral consequences of his plea, e.g., parole date eligibility. Strader v. Garrison, 611 F.2d 61 (4th Cir. 1979). Counsel is required to inform a client who pleads not guilty and is convicted at trial of his right to appeal. Nelson v. Peyton, 415 F.2d 1154 (4th Cir. 1969), *cert. denied*, 397 U.S. 1007 (1970). However, an attorney is not required to inform his client of his right to appeal where the

client enters a plea of guilty absent special circumstances. Carey v. Leverette, 605 F.2d 745 (4th Cir.), *cert. denied*, 444 U.S. 983 (1979).

The PCR court did not directly address this claim. However, Sheppard has not shown special circumstances which required counsel to advise him of his right to appeal.

### 3. Defective Indictment

Sheppard assets that his armed robbery indictment was defective because it did not allege the essential element of "asportation." The PCR Court found the indictment was sufficient under South Carolina law. (App. 133-34). This finding necessarily leads to the conclusion that Allen committed no error with respect to the indictment. An attorney is not required to file frivolous motions.

### 4. The Marshall Statement

Sheppard alleges that the victim who was shot, Marshall, gave a written statement to police which was exculpatory or limited Sheppard's involvement in the crimes. He asserts that his attorney was ineffective for failing to obtain a copy of the statement prior to the guilty plea. The statement is not a part of the record. It is not clear that Marshall ever gave a written statement. Sheppard has never seen it. (App. 100-101). Detective Fuller and Allen could not locate a copy of any statement given by Marshall (App. 106-108, 112). The PCR could held that Sheppard failed to produce evidence to show that Marshall had given a statement which would have benefitted him. This finding is completely supported by the record. It follows that Sheppard has not shown that Allen violated the Strickland standard by failing to obtain the Marshall statement, if it exists.

5.     Plea Negotiations

As discussed above, Sheppard's plea was pursuant to an agreement which was stated on the record. Sheppard affirmed that he understood the plea agreement and that no other promises had been made to him. (App. 8-11). He now asserts that his attorney was ineffective because Allen told him he would receive a sentence of 15 or 20 years. This issue was not addressed by the PCR court.

At the PCR hearing, Sheppard testified about the plea negotiations. In that connection, he stated he had discovered a letter form the Solicitor that stated he would get "just straight up 30 years." (App. 88). The letter is not a part of the record. He also testified that Allen advised him of the mandatory minimum sentence of 10 years and the maximum of 30 years (under the plea agreement), but that Allen also told him that "I wouldn't receive the whole 30, you know 20,15, something like that." (App. 89). Allen testified that the plea agreement stated on the record was correct. (App. 119-20).

The PCR court implicitly found that Sheppard's testimony that Allen told him he would be sentenced to incarceration for less than 30 years was not credible. Sheppard affirmed under oath that he was promised nothing other than the plea agreement stated in the record. He is not entitled to relief on this ground.

6.     Subject Matter Jurisdiction

Sheppard asserts that his attorney was ineffective for failing to challenge the indictments based on state procedural rules. At the PCR hearing, Sheppard testified that state law requires that a defendant be indicted within 90 days of arrest, but he was not indicted until 93 days after his arrest. (App. 84). According to Sheppard, this deprived the trial court of subject matter jurisdiction. This issue was not addressed by the PCR court.

The criminal jurisdiction of the Circuit Courts in South Carolina is established by Article V, § 11 of the South Carolina Constitution ("The Circuit Court shall be a general trial court with original jurisdiction in …criminal cases"). Subject matter jurisdiction is the authority of a court to hear and determine cases of the general class to which the proceedings in question belong. Dove v. Gold Kist, Inc., 442 S.E.2d 598 (S.C. 1994) and State v. Gentry, 610 S.E.2d 494, 498 (S.C. 2005). The Circuit Court gains subject matter jurisdiction in a criminal case in one of three ways: "(1) the grand jury true bills an indictment which sufficiently states the offense; (2) the defendant waives presentment in writing; or (3) the offense is a lesser included offense of a crime adequately charged in a true bill of indictment." State v. Gonzales, 600 S.E.2d 122, 124 (Ct. App. 2004).

A court's jurisdiction over the subject matter of a proceeding before it is fundamental. A party may raise lack of subject matter jurisdiction at any time, including on appeal for the first time. Further, the court may raise the issue *sua sponte*. Lack of subject matter jurisdiction may not be waived by the parties. Brown v. State, 540 S.E.2d 846 (S.C. 2001). The acts of a court which lacks subject matter jurisdiction are void. State v. Funderburk, 191 S.E.2d 250 (S.C. 1972).

Since a state defines the subject matter jurisdiction of its courts, a challenge on the basis of lack of subject matter jurisdiction is a quintessential question of state law. Thus, the frequently quoted maximum that a criminal defendant can raise the issue of lack of subject matter jurisdiction at any time should actually be phrased "at any time he is in state court." In other words, it is up to South Carolina courts to resolve issues as to whether or not subject matter jurisdiction exists. This court does not review determinations of state law made by South Carolina courts. See Pulley

v. Harris, 465 U.S. 37 (1984) ("[A] federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law.").

There are at least two problems with Sheppard's argument. First, S.C.R. Crim. P. 3(c)(1) does not require that a defendant be indicted within 90 days of arrest. The rule provides that the Solicitor shall prepare and file the proposed indictment with the Clerk of Court within 90 days of his receipt of the arrest warrant. Thus, Sheppard uses the wrong date for the beginning and the end of the 90 day period established by the rule. He has presented no evidence or argument which shows the correct dates. Second, Rule 3 is not a jurisdictional rule which would require dismissal of an indictment which offended the rule or bar prosecution. The only remedy would be to attempt to hold the Solicitor in contempt for violation of the Rule. State v. Culbreath, 282 S.C. 38, 316 S.E.2d 681 (1984).

Therefore, the undersigned concludes that Allen committed no error in failing to challenge the indictments based on this state procedural rule.

7.     Multiple Kidnapping Indictments

Sheppard asserts that his attorney was ineffective for telling him that he could be punished separately on the three kidnapping indictments. According to Sheppard, he could only be charged with one kidnapping based on the Double Jeopardy Clause (See Petition, p. 15).[4] The PCR court correctly ruled that "(t)here is no double jeopardy in Appellant's case, as multiple kidnapping charges are permissible when a defendant kidnaps multiple victims in a single

---

[4]Sheppard cites Ashe v. Swenson, 397 U.S. 436 (1970) for the proposition that "(t)he prosecutor cannot try an accused on separate indictments from the single transaction episode where there was more than one victim unless the crime statute and facts are different." Actually, Ashe held that collateral estoppel prevented a second trial for a second victim on separate robbery indictments where defendant was acquitted at first trial where the identification of the defendant was the only issue.

indictment." (App. 135). The Double Jeopardy Clause bars double punishment for the same offense. Here, three victims equal three offenses. See Bockenburger v. U.S., 284 U.S. 299 (1932). Since Sheppard is wrong in his Double Jeopardy Clause analysis, his ineffective assistance of counsel claim on this basis must fail.

    8.    Failure to Investigate

An attorney has a duty to make a reasonable factual and legal investigation to develop appropriate defenses. Sneed v. Smith, 670 F.2d 1348 (4th Cir. 1982). The reasonableness of the investigation is evaluated by the totality of the circumstances facing the attorney at the time. Bunch v. Thompson, 949 F.2d 1354 (4th Cir. 1991), *cert. denied*, 505 U.S. 1230 (1992). The Courts recognize limits to investigation based on time, resources, and relevance and conclude that "Stirckland does not impose a constitutional requirement that counsel uncover every scrap of evidence that could conceivably help their client." Green v. French, 143 F.3d 865, 892 (4th Cir. 1998), *abrogated on other grounds* by Williams v. Taylor, 529 U.S. 362 (1998). A decision not to investigate a particular avenue of defense is assessed by the same standard of "reasonableness in all the circumstances" by which an attorney's performance is measured in other areas. Strickland, 466 U.S. 690-91. A petitioner asserting a claim of ineffectiveness of counsel in failing to investigate must make a showing that the failure was prejudicial. Generally, the failure to investigate and present a potential alibi witness supports a claim of ineffective assistance of counsel. However, at the PCR hearing, the petitioner must present evidence establishing what the witness would have said at trial. Bassette v. Thompson, 915 F.2d 932 (4th Cir. 1990), *cert. denied*, 499 U.S. 982 (1991).

Sheppard asserts that Allen failed to investigate in two areas. First, he asserts that an investigation into his statements would have shown a discrepancy in Detective Fuller's testimony.

Sheppard alleges that the statements he actually signed were handwritten, but Fuller testified that they were typewritten. Second, Sheppard asserts that an investigation would have shown that he was not guilty of armed robbery because there was not "a mutual understanding nor agreement between him and co-defendant." (Petition, p. 11). He also asserts that the armed robbery was completed before he entered the scene. (Id.). The PCR court did not directly address these claims.

The undersigned concludes that whether Sheppard signed handwritten or typed statements is insignificant. As noted above, Sheppard admitted that the statements were voluntarily given at his plea hearing. Sheppard has not produced any of the statements, and it is not clear that if there were both handwritten and typewritten statements that there was any difference in their substance. Further, Sheppard's present version of the armed robbery is contradicted by the facts relayed to the court at the plea hearing which Sheppard agreed were correct. (App. 20-27).

9.     DNA

Sheppard asserts that there was insufficient evidence to convict him of criminal sexual conduct because the State could not prove penetration as the DNA evidence excluded him. (App. 86). Sheppard asserts that Allen was ineffective for failing to develop a defense on this basis. To press this point, Sheppard again has to disavow that he admitted the sexual battery to the police and that he told Allen that he had sex with the victim but it was consensual. (App. 117).

Sheppard is correct that the DNA testing did not establish that he had sex with the victim. Allen testified that he told Sheppard of the results of the DNA test before the guilty plea. Despite Sheppard's present claims, he was still faced with the victim's testimony and his own admissions had he gone to trial. The PCR court found all of Sheppard's testimony not credible. The negative DNA test is not conclusive proof that he did not rape the victim. Given these circumstances, counsel was not ineffective.

## Conclusion

Based on a review of the record, the undersigned finds that petitioner failed to show that his attorney was ineffective under the <u>Strickland</u> standard. It is, therefore, recommended that respondent's motion for summary judgment be granted.

                                                            Respectfully submitted,

                                                            s/Joseph R. McCrorey
                                                           United States Magistrate Judge

June 15, 2006
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

<u>Notice of Right to File Objections to Magistrate Judge's Report and Recommendation</u>
<u>&</u>
<u>The Serious Consequences of a Failure to Do So</u>

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. <u>Advance Coating Technology, Inc. v. LEP Chemical, Ltd.</u>, 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See <u>Mathews v. Weber</u>, 423 U.S. 261, 270-271 (1976); and <u>Estrada v. Witkowski</u>, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, <u>but</u> <u>not</u> <u>thereafter</u>, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See <u>United States v. Schronce</u>, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, <u>Schronce v. United States</u>, 467 U.S. 1208 (1984); and <u>Wright v. Collins</u>, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508-509 (6th Cir. 1991). See also <u>Praylow v. Martin</u>, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In <u>Howard</u>, *supra*, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* <u>Lockert v. Faulkner</u>, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

<u>See</u> <u>also</u> <u>Branch v. Martin</u>, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and <u>Goney v. Clark</u>, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See <u>Wright</u>, <u>supra</u>,; and <u>Small v. Secretary of HHS</u>, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk<br>
United States District Court<br>
901 Richland Street<br>
Columbia, South Carolina 29201